UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

CARRY AMOS                                      CIVIL ACTION NO. 13-0911

VERSUS                                          JUDGE ROBERT G. JAMES

CITY OF MONROE                                  MAG.  JUDGE KAREN L. HAYES

RULING

This action was brought by Plaintiff Carry Amos ("Amos") against Defendant the City of Monroe ("the City").  Amos has raised claims of breach of contract and substantive due process stemming from the City's failure to promote him to Trash Superintendent despite his seniority.

Pending before the Court are cross-motions for summary judgment filed by the City [Doc. No. 8] and Amos [Doc. No. 10].

For the following reasons, Amos' Motion for Summary Judgment [Doc. No. 10] is DENIED, and the City's Motion for Summary Judgment [Doc. No. 8] is GRANTED IN PART AND DENIED IN PART.

I.      FACTS AND PROCEDURAL HISTORY

Amos began working for the City in 2001 in the Trash Division, where he has remained throughout his employment.   Amos is classified as an Operator II and initially worked on a two-man trash truck.  Approximately three years ago, the City purchased one-man trucks.  Since then, Amos has operated a one-man truck for the pick-up and disposal of business and residential trash, including boxes, tree limbs, garden refuse, discarded or abandoned materials, litter and rubbish (as opposed to household garbage and garbage bags).  Amos is a member of the American Federation of State, Country, and Municipal Workers, Local 2388 ("the Union") .

During his employment, Amos has received various reprimands for absenteeism.  On February 17, 2003, Amos received his first Written Warning for "excessive absenteeism." [Doc. No. 8-4, p. 20].  On March 22, 2004, Amos received another warning, and, on June 13, 2005, he was suspended for one week for excessive absenteeism, with a warning that "[i]f continues will be terminated."  [Doc. No. 8-4, pp. 21-23].  In 2008, Amos had knee surgery and missed approximately four months of work for recovery.  [Doc. No. 8-5, pp. 10-11].  On March 16, 2009, Amos was placed on the excessive absenteeism list.  *Id.* at 24.  At Amos' deposition, he could not recall seventy-nine missed days in 2006, eighty-five missed days in 2007, or forty-one missed days in 2010.  Amos offered no explanation and did not know why he would have missed these days.[1]

On August 7, 2007, and August 11, 2008, Amos received disciplinary actions for failure to follow job instructions.  [Doc. 8-4, pp. 25 & 28].  The second action resulted from a dispute as to whether Amos could be forced to work overtime.  Despite a recommendation for firing, Monroe Mayor James E. Mayo ("Mayor Mayo") suspended Amos for one week without pay.

Pursuant to the Collective Bargaining Agreement ("CBA"), on February 29, 2012, the City posted a "Memo re: Job Opening" ("Job Memo") [Doc. No. 10-11], notifying employees of a job opening in the Trash Division for Trash Superintendent.  The Job Memo stated the following:

> There is a job opening in the Trash Department for a Trash Superintendent.  If a current City employee does not fill the position within 10 working days it will be open to the public on March 15, 2012.

---

[1]In his opposition, Amos argues that prior to 2008 he missed work for knee issues, but, as the City correctly points out, his deposition testimony contradicts this argument.  [Doc. No. 19, p. 24].

**DEFINITION**
Under general supervision; Responsible for all trash pick up inside
City of Monroe.

**EXAMPLES OF DUTIES**
Coordinates and directs all trash projects performed by the department;
inspects work during and after completion; keeps records of jobs
performed; determines priority of projects; talks with the public.

**MINIMUM QUALIFICATIONS**

Skills, Knowledge, and Abilities

Ability to supervise, comprehend, and organize daily
assignments of work to be accomplished. Capable of printing
legible notes for records. Knowledge of operating procedure
of the trash routes, equipment and city streets. Ability to talk
with the public.

Training and Experience

Minimum two years experience in the trash department.
Appropriate driver[']s license.

[Doc. No. 10-11].

Amos and Tommy Landers ("Landers") were the only applicants for the Trash
Superintendent position. Amos had been employed by the City for twelve years and Landers for
two years at the time. It is undisputed that Amos was the employee with the longest continuous
service. Don Hopkins ("Hopkins"), the City's Sanitation Superintendent, chose Landers for the
position.

In response to Landers' promotion, Amos filed grievances with the City, stating that the
City had violated the CBA and requesting that he be promoted to the position of Trash
Superintendent. After Mayor Mayo rejected Amos' Step III Grievance, Amos had exhausted all

3

administrative remedies.  On May 2, 2013, Amos filed the instant action.

On February 24, 2014, the City filed a Motion for Summary Judgment [Doc. No. 8] praying that the Court dismiss Amos' demands with prejudice, at his cost, and award attorney's fees for the defense of this action.  The City claims to establish the following as a matter of law: (1) the City did not breach the CBA when it failed to promote Amos; (2) Amos does not have a substantive due process claim; and (3) the City is entitled to attorney's fees pursuant to 42 U.S.C. § 1988(b).

On February 24, 2014, Amos filed a Motion for Summary Judgment [Doc. No. 10].  Amos seeks a ruling that he has established the following as a matter of law: (1) Amos was qualified for the position of Trash Superintendent and had the longest continuous service; (2) the City clearly violated the CBA when it failed to promote Amos to the position of Trash Superintendent; (3) the City's failure to adhere to its own policies was arbitrary and capricious.

On March 17, 2014, the City filed an opposition [Doc. No. 15] to Amos' Motion for Summary Judgment, and Amos filed a reply [Doc. No. 17] on March 31, 2014.

On April 4, 2014, Amos filed an opposition [Doc. No. 19] to the City's Motion for Summary Judgment.  On April 16, 2013, the City filed a reply [Doc. No. 20], and Amos filed a sur-reply on April 23, 2014 [Doc. No. 24].

## II.    LAW AND ANALYSIS

### A.    Standard of Review

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c)(2).  The moving

4

party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial.  *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994).  The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor.  *Anderson*, 477 U.S. at 255.

### B.      Claims Under the CBA

The parties assert conflicting claims under the CBA.  Two articles of the CBA apply in this case.  Article II, Section 3 of the CBA governs Management Rights and Obligations and states, in pertinent part:

> ### Section 3.      Management Rights and Obligations
>
> It is the duty of the City of Monroe to negotiate in good faith concerning wages, hours, and conditions of employment with this Local.  The City is entitled **without negotiation** or reference to any agreement resulting from negotiations:

5

A.      To direct its employees

B.      To hire, promote, classify, transfer, assign, retain, suspend, demote, discharge, or take disciplinary action against any employee for cause

[Doc. No. 10-22, p. 20] (emphasis added).

Article VII of the CBA governs Work Force Changes, which include promotions, and states, in pertinent part:

Promotions

The term "promotion", as used in this provision, means the advancement of an employee to a higher paying position. . . .

Whenever a job opening occurs –other than a temporary opening as defined below– in any existing job classification or as the result of the development or establishment of new job classifications, a notice of such opening shall be posted on all bulletin boards for ten (10) working days.

. . .

**The Employer shall fill the opening by promoting from among the qualified applicants the employee with the longest continuous service**. . . .

[Doc. No. 10-20, pp. 6-7] (emphasis added).

Amos' claim for alleged breach of the CBA falls exclusively under Louisiana law.[2]  The

---

[2] Amos argues that the Louisiana Legislature made the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), applicable to public sector employers and employees, such as the parties in the instant motion.  *See Davis v. Henry*, 555 So. 2d 457, 459 (La. 1990);  La. Rev. Stat. Ann. §§ 23:984(B), 821-24.

Section 301(a) of the LMRA governs CBAs and allows parties to sue in federal court for breaches of CBAs. *See Stevens v. Lake Charles Coca–Cola Bottling Co.*, 2011 WL 2173649, (W.D. La. June 1, 2011).  However, the LMRA exempts states and political subdivisions, including municipalities, from suits under the LMRA.  *Lawson v. City of Monroe*, CIV.A. 12-2233, 2013 WL 3967161 (W.D. La. July 31, 2013).  As an employee of a municipality, Amos is not an "employee" and the City is not an "employer" within the meaning of the LMRA. *See* 29

CBA is a contract between the City and the Union, and Louisiana contract law applies.

"Interpretation of a contract is the determination of the common intent of the parties." LA. CIV. CODE ANN. art. 2045.  "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."  *Id*. at 2046.  "The words of a contract must be given their generally prevailing meaning.  Words of art and technical terms must be given their technical meaning when the contract involves a technical matter."  *Id*. at 2047.  "Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract."  *Id*. at 2048.  "A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective."  *Id*. at 2049.  "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."  *Id*. at 2050.  "A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties."  *Id*. at 2053.

In order to resolve the cross-motions for summary judgment, the Court must consider three issues under the CBA: (1) how qualifications for a position are determined and by whom, (2) whether Amos was qualified for the position, and (3) whether the City violated the CBA by failing

---

U.S.C. § 142(3) (Under the LMRA, "[t]he terms ... 'employer' [and] 'employee' ... shall have the same meaning as when used in the National Labor Relations Act [ 'NLRA') ]."); *see also* 29 U.S.C. Art. § 152(3) ("[t]he term 'employee' ... shall not include any individual ... employed by ... any other person who is not an employer as herein defined."); 29 U.S.C. § 152(2) ("[t]he term 'employer' ... shall not include any State or political subdivision thereof...."); *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 102 n. 9 (1972) ("the [NLRA] specifically exempts States and subdivisions ... and... cities from the definition of 'employer' within the Act.") (citing 29 U.S.C. § 152)).

to promote him.   The three issues are closely related because it is undisputed that Amos was the more senior of the two applicants.

        1.    *Qualifications*

The City avers that Article II, Section 3 (Management Rights and Obligations) and Article VII (Promotions) of the CBA are unambiguous and should be interpreted (1) "to allow the City to determine 'qualified applicants' for any position, and to promote from among those qualified applicants, the most senior of those applicants," and (2) that the City has the right to set qualifications.  [Doc. No. 8-1, p. 25].  The City puts forth that "the word 'qualified' <u>must</u> have meaning in relation to the word 'applicants,' and it must be considered in relation to the City's <u>right, responsibility and obligation</u> to examine job qualifications of employee-applicants." *Id*. at 24 (emphasis in original).  Furthermore, "in relation to determining qualifications for open positions," the City points to its past practices of relying upon the Management Rights and Obligations provisions in "rejecting the 'seniority' argument" used by Amos.   *Id*. at 25.  Amos acknowledges that seniority is not the sole consideration in selecting an applicant, and seniority is a deciding factor only when choosing from among the qualified employees.  However,  Amos rejects the City's view that the CBA gives the employer the right to determine qualifications for any position, arguing instead that (1) "the standards contained in the Trash Superintendent job description were negotiated between the City and Union" and could not be modified without collective bargaining, and (2) that an employee who meets the Job Memo's "Minimum Qualifications" qualifies for promotions pursuant to Article VII.  [Doc. No. 19, p. 26].

First, the Court must determine whether the CBA's provisions regarding job qualifications are clear or ambiguous.  "The determination of whether a contract is ambiguous is . . . a question

of law.  A contract is not ambiguous merely because the parties disagree upon the correct interpretation or upon whether it is reasonably open to just one interpretation"  *D.E.W., Inc. v. Local 93, Laborers' Int'l Union of N. Am.*, 957 F.2d 196, 199 (5th Cir. 1992) (citation omitted). Article II's provision states that "[i]t is the duty of the City of Monroe to negotiate in good faith concerning wages, hours, and conditions of employment with this Local.  The City is entitled without negotiation or reference to any agreement resulting from negotiations... [t]o hire, promote, classify."  [Doc. No. 10-22, p. 2] (emphasis added).  A clear reading of this provision provides that the City is only obligated to negotiate with the Union in regard to "wages, hours, and conditions of employment"; however, the City has the right to "hire, promote, and classify" **without negotiating with the Union**.  Article II, Section 3 is unambiguous.  Thus, under Article II, Section 3, the City does **not** have to negotiate with the Union about these management rights issues, which would appear to include setting qualifications and determining whether an applicant is qualified.  *See United Steelworkers of Am. v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 583(1960) (holding that CBAs restrict the exercise of management functions, but do not oust management from promoting, absent an agreement otherwise).

However, the Court has also considered the more specific provisions of the CBA contained in Article VII.  Article VII,  titled Work Force Changes, contains restrictions on the general Management Rights and Obligations listed in Article II.  Article VII appears to be well thought out and thorough.  This Article defines "promotions," obligates the City to post notices for job openings, instructs employees on how to apply for open positions, discusses temporary positions, and contains a seniority provision.  The seniority provision provides that "[t]he Employer shall fill the opening by promoting from among the **qualified applicants** the employee

9

with the longest continuous service." [Doc. 10-22, p. 7] (emphasis added).  Nowhere in Article VII, nor in the CBA as a whole, is there a provision that reasonably suggests that the City is obligated to negotiate job descriptions and/or qualifications.

Because the Court concludes that the CBA clearly gives the City the right to promote and classify under the general management rights clause and does not otherwise restrict those rights under the Work Force Changes article, Amos cannot rely on extrinsic evidence to alter the CBA. LA. CIV. CODE ANN. art. 2046 & 2049.  Accordingly, the Court cannot consider Union President Robert Johnson's ("Johnson") testimony that job descriptions are negotiated when this testimony contradicts Article II's clear language. [3]

2. *Whether Amos was Qualified*

Although the Court has determined that the CBA gives the City the rights to set qualifications and determine if an applicant is qualified, the Court must also determine whether the City's failure to classify Amos as qualified violated the CBA.

Amos argues that he was qualified for the Trash Superintendent position because he satisfied the Job Memo's "Minimum Requirements" and could perform the "Examples of Duties."[4]  Amos reasons that "if an employee meets [the Job Memo's] minimum qualifications, then that employee is considered to be qualified for that position under Article VII of the CBA."

---

[3]Although Amos does not directly argue that the CBA was modified, such an argument would nevertheless fail.  First, pursuant to Article XXVII "either party shall notify the other in writing...to modify the agreement." [Doc. No. 10-22, p. 19].  Second, pursuant to Article II, Section 2 "[a]greement reached between [the City and Union] shall become effective only when signed...." [Doc. No. 10-22, p. 2].  Here, no such written and signed agreement was produced, and oral modifications are not permitted under the CBA.

[4]This is not a discrimination case, and Amos is not alleging an illegal reason for the City's failure to promote him.  He simply disagrees with the City's decision.

10

[Doc. No. 19, pp. 26 & 10-2, p. 21-22].[5]   Amos cites co-workers' testimony that he was not only qualified for the position, but had frequently performed many of the duties of a Trash Superintendent.[6]   Furthermore, Amos alleges that Hopkins chose Landers over Amos because of Hopkins' and Landers' close personal friendship, not because of Amos' lack of qualifications.[7] Amos concludes that the City breached the CBA when it promoted the applicant it deemed **most** qualified, instead of the qualified applicant with the longest continuous service.

The City maintains that it acted within its management rights to determine whether Amos was a "qualified applicant" for the Trash Superintendent position, and its failure to promote Amos did not violate the CBA.  The City avers that it "found Landers to be the only qualified applicant it believed could perform all duties of the Trash Superintendent position."  [Doc. No. 15, p. 18]. The City disputes that the Job Memo was a job description containing an exclusive lists of

---

[5] Amos argues that the City "is estopped from using other 'criteria' in determining whether an applicant is qualified for the position in question" because the job description is a negotiated document between the City and Union and is not subject to change absent further negotiations between the parties.  [Doc. 10-2, p. 22].  For the reasons previously discussed, Article II clearly exempts the City from negotiations with the Union on a position's qualifications.  Thus, the City is not estopped from using other "criteria" in determining whether an employee was qualified for the position in question due to a subsequent negotiation.

[6] The City contests that the opinion testimony of Amos' co-workers on Amos' "claimed 'qualifications' for the Trash Superintendent position, is not proper summary judgment evidence."  [Doc. No. 15, p. 13].  To the extent that the co-workers discuss witnessing Amos' performance, the testimony is based on personal knowledge and is fact testimony.  Thus, the evidence is appropriate and is considered.  However, whether or not Amos was qualified is a legal conclusion reserved for the trier of fact.  Therefore, to the extent that the co-workers' and Johnson's opinion conclude that Amos is qualified, the testimony is improper summary judgment evidence.

[7] The City argues that Amos' co-workers cannot give opinion testimony on the alleged "close personal friendship" of Hopkins and Landers affecting Hopkins' promotion decision.  The Court agrees that the proffered constitutes inadmissible testimony that is hearsay and is speculative. Thus, such testimony is improper summary judgment evidence.

qualifications and argues that "the past practice has been for 'minimum qualifications' to set the

standard <u>for applying for a job opening –not for being promoted to it</u>."[8]  *Id.* at 20.  In support of its

argument, the City cites the affidavit of Hopkins for the specific reasons Hopkins did not believe

Amos had the abilities demanded by the Trash Superintendent position.  Hopkins described the

required qualifications for the position[9] and his consideration of Amos' (1) work history[10], (2)

---

[8] The City cites the deposition of Johnson, who states this past practice of the City. However, Johnson later agrees with Amos' attorney that, in his opinion, "[m]inimum qualifications. . . . is what you have to meet in order to be qualified. . . ."  [Doc. No. 10-4, p. 43]. Johnson's later statement is Johnson's opinion and does not alter Johnson's former statement, which is fact testimony evidencing a past practice.

[9] Hopkins stated that:

> The Trash Superintendent must have leadership qualities, managerial skills and organizational abilities; he must be qualified to deal with and resolve work-related problems or difficulties involving employee job assignments and/or work priorities.  Further, the position requires a person with initiative, determination and the capability to deal with business owners, citizens and the public at large in relation to service problems, service improvement and service concerns of any nature. The Trash Superintendent must also have the ability to budget his department, order the proper supplies on a continuous basis, and deal with vendors who serve or seek to serve the Trash Division.  From my personal observations of both Amos and Landers, I saw all of these qualities and abilities in Landers; I saw none of them in Amos, even though Amos had more seniority. While Amos performed well as a trash truck Operator II, the Trash Superintendent position requires far more than the ability to operate a trash truck.

[Doc. No. 8-4, p. 3].

[10] Hopkins states that his "decision was made after a careful consideration of the work histories of Amos and Landers, together with a weighing of the demonstrated abilities and leadership qualities. . . ." [Doc. No. 8-4, p. 4].

absenteeism, (3) prior statements about working alone[11], (4) reprimands, (5) failure to "step up" to

the position[12], and (6) other characteristics superiors felt Amos lacked.  Hopkins "observed that

Amos' job attendance improved after he began working on the one-man truck.  [Hopkins]

believed this was due to his stated preference for working alone."  [Doc. No. 8-4, p. 2].[13]  Also,

---

[11] Hopkins was "aware that Amos had stated that he liked working alone on the one-man
truck." [Doc. No. 8-4, p. 1].  Amos confirmed that he made a similar statement in his deposition;
however, Amos sought to qualify his statement as a preference for working on the one-man
truck, as opposed to generally working alone.  [Doc. No. 8-5, pp. 16 & 22-25].  Notably, Amos
does not claim to have made this distinction known to Hopkins.

[12] According to Hopkins, Amos' supervisor regularly missed work due to medical issues
and it was necessary for someone to assume his responsibilities.  Hopkins stated that:

> During these periods, an employee from the Trash Division could
> "step-up" or "work out of class" to fill the vacant leadership role.  I
> was aware that Amos never sought to "step-up," and, in fact, that
> Amos never did step-up to fill the Trash Superintendent position.
> Further, I did not observe any instances of Amos assuming
> responsibilities that would normally be undertaken by the Trash
> Superintendent.  I did not observe any conduct by Amos which led
> me to believe he ever desired to "step-up" to the position held by
> Simmons.

[Doc. No. 8-4, p. 2].

Although Amos argues that he performed many of the Trash Superintendent's duties, in his
deposition Amos acknowledges that he never informed management that he was performing the
Trash Superintendent's duties.

[13]Amos argues that the City's emphasis on Amos' absenteeism is irrelevant and pretextual
given that the evidence shows that Amos avers that his absence was due to a medical condition
and that he was last disciplined for excessive absenteeism over three years prior to applying for
the promotion.  [Doc. No. 19, p. 24].  This Court disagrees.  Amos' absenteeism was a relevant
factor in Hopkins evaluation of Amos' qualifications.

First, despite Amos' argument, Amos acknowledges in his deposition that he was
unaware of any reasons that he may have missed work, except for the four months he missed in
2008 due to knee surgery.  He does not attribute his absenteeism before or after 2008-2009 to
knee problems.  Second, an employee's long history of excessive absenteeism may be relevant in

Hopkins considered the importance of the Trash Division being properly managed and operated as well as the abilities demanded by the position.  [Doc. No. 8-1, p. 15].

First, because the City has the right to set qualifications and determine who is qualified, the City is not restricted to the "Minimum Qualifications" and "Examples of Duties" when determining whether an applicant is qualified.  Furthermore, even if the Job Memo were a job description, it is apparent from a clear reading of the Job Memo that additional qualifications may exist.  A list of "Examples of Duties," implies that the list is not an exclusive list of all duties.  Given that additional duties exist, the Job Memo's list of "Minimum Qualifications" is not an exclusive list of qualifications.  Thus, the City may consider qualifications and duties beyond the Job Memo.

Second, the CBA gives the City the rights to set qualifications for a position and determine whether an applicant meets those qualifications.  Even if the Amos can show at trial that he could perform the objective tasks listed in the Job Memo, he cannot show that he met all qualifications for the position. Although Hopkins considered the duties of the Trash Superintendent listed in the Job Memo, he also considered Amos' initiative, leadership qualities, work history, disciplinary record, absenteeism, a perceived failure to "step-up," and statements concerning working alone. As a result, Hopkins concluded that Amos was not qualified because he did not satisfy these criteria.  Amos fails to present a material issue of fact for trial as to whether Hopkins' reliance on these criteria and his determination that Amos was not qualified were arbitrary and capricious. The City had the discretion to determine whether Amos was qualified and determined that Amos was not qualified.  Thus, Article VII's seniority provision was not applicable, and the City did not

_____

determining whether the employee is qualified for a promotion.

breach the CBA.

Amos' Motion for Summary Judgment on the state law breach of contract claim is
DENIED.  The City's Motion for Summary Judgment on the state law breach of contract claim is
GRANTED, and this claim is DISMISSED WITH PREJUDICE.

### 3. *Substantive Due Process*

To state a violation of substantive due process under the Fourteenth Amendment, "the
plaintiff must show ... (1) that he had a property interest/right in his employment, and (2) that the
public employer's termination of that interest was arbitrary or capricious."  *Lewis v. Univ. of Tex.
Med. Branch of Galveston,* 665 F.3d 625, 630 (5th Cir.2011) (quoting *Moulton v. City of
Beaumont*, 991 F.2d 227, 230 (5th Cir.1993)).  The property interest must stem from "state law,
operation of contract, or other independent source."  *Cabrol v. Town of Youngsville*, 106 F.3d
101, 105-06 (5th Cir.1997).

Here, Amos' state law breach of contract claims have been dismissed.  Further, given the
Court's determination, Amos cannot establish that the City was arbitrary and capricious in its
failure to promote him.  Therefore, Amos' Motion for Summary Judgment is DENIED.  The
City's Motion for Summary Judgment is GRANTED, and this claim is DISMISSED WITH
PREJUDICE.

### 4. *Attorney's Fees*

The City argues that it is entitled to attorney's fees pursuant to 42 U.S.C. § 1988(b)
because Amos' substantive due process and breach of the CBA claims are frivolous.  Amos
contends that his claims are based on established precedent and, thus, are not frivolous.

The statute provides, in pertinent part, that "[i]n any action or proceeding to enforce a

provision of sections . . . 1983 . . . of this title, the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b).  Amos brought his substantive due process claim under 42 U.S.C. § 1983.  "In determining whether a suit is frivolous, the district court should look to factors such as whether the Plaintiffs established a prima facie case, whether the defendant offered to settle, and whether the court dismissed the case or held a full trial." *Walker v. City of Bogalusa*, 168 F.3d 237, 240 (5th Cir. 1999).

Here, Amos perceived the Job Memo's "Minimum Qualifications" as an exclusive list of all the criteria the City could rely on in determining whether Amos was qualified for the promotion.  Amos presented evidence that he satisfied the Job Memo's "Minimum Qualifications," and was therefore qualified for the promotion.  Amos argues that given his qualifications and undisputed seniority, he was entitled to the promotion pursuant the Article VII's seniority provision.  Amos argues that the City's failure to promote him was arbitrary and capricious in light of his obvious seniority and qualifications.  Although the Court has ruled in the City's favor, the Court does not find Amos' claims to be frivolous and declines to award the City attorney's fees.

The City's Motion for Summary Judgment is DENIED IN PART to the extent that the City seeks attorney's fees pursuant to 42 U.S.C. § 1988(b).

## III.   CONCLUSION

For the forgoing reasons, Amos' Motion for Summary Judgment is DENIED, and the City's Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART.  The City's motion is DENIED IN PART to the extent that it seeks attorney's fees pursuant to  42 U.S.C. § 1988(b).  Otherwise the City's motion is GRANTED, and Amos' claims are

16

DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 21st day of May, 2014.


ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

17